UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE


Urological Surgery Professional
Association; et al.

v.                                    Civil No. 08-cv-241-LM

William Mann Company, Inc.; et al.



**O R D E R**

Plaintiffs in this case are a medical practice, two benefit plans sponsored by the practice (which are governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1101-1461), and Dr. Edward Chibaro, an employee and director of the practice who was both a trustee and a participant/beneficiary of the benefit plans ("the Plans"). Defendants are an investment firm that advised the Plans and the president of the firm.  (Plaintiffs also sued Fecteau Benefits Group, Inc., the Plans' third-party administrator, and its president, Thomas Fecteau, but the claims against those defendants, Counts I, II, and III, have been settled.) Plaintiffs seek to recover damages equal to the amount of certain payments made by the Plans to several departing

participants.[1]  Plaintiffs make two claims under ERISA, one for breach of fiduciary duty (Count IV), the other for contribution and indemnity (Count V).  They also assert claims under New Hampshire tort law (Count VI).  Before the court is defendants' motion for summary judgment.  Plaintiffs object.  For the reasons given, the court grants summary judgment to defendants on the ERISA claims and declines to exercise supplemental jurisdiction over the remaining state-law claims.

## Summary Judgment Standard

Summary judgment should be granted when the record reveals "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "The object of summary judgment is to 'pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required.'"  Dávila v. Corporación de P.R. para la Diffusión Pública, 498 F.3d 9, 12 (1st Cir. 2007) (quoting Acosta v. Ames Dep't Stores, Inc., 386 F.3d 5, 7 (1st Cir. 2004)).  When ruling on a party's motion for summary judgment, a trial court "constru[es] the record in the light most favorable to the nonmovant and resolv[es] all reasonable inferences in [that] party's favor."  Meuser v. Fed.

---

[1] The largest of those payments resulted from the judgment in an ERISA benefits claim against the Plans.  See Janeiro v. Urological Surgery Prof'l Ass'n, 457 F.3d 130 (1st Cir. 2006).

Express Corp., 564 F.3d 507, 515 (1st Cir. 2009) (citing

Rochester Ford Sales, Inc. v. Ford Motor Co., 287 F.3d 32, 38

(1st Cir. 2002)).

### Background

The Urological Surgery Professional Association ("USPA")

sponsored the USPA Money Purchase Pension Plan and the USPA

Profit Sharing Plan and Trust.  According to the Summary Plan

Descriptions for both Plans, the USPA was the "Plan

Administrator" and Chibaro was both the "Plan Trustee" and the

"Plan Committee."  Defs.'s Mot. Summ. J., Ex. E (document no.

42-1), at 5, 19.

During the years 2000, 2001, and 2002, "William Mann

Company, Inc. ('William Mann'), acting through Mr. William

Prizer, served as discretionary investment advisor with

authority to invest and reinvest plan assets."  Pls.' Obj. to

Summ. J., Ex. 1 (Chibaro Aff., document no. 44-2) ¶ 15.  In

addition to providing investment advice to the Plans, Prizer

also served as a personal investment advisor to Chibaro's former

medical partner, Dr. John Janeiro, and to Chibaro's ex-wife,

Mary Chibaro.  Chibaro Aff. ¶¶ 22, 23.  On that basis, Prizer

was familiar with both the break-up of the USPA, described

below, and the Chibaros' divorce.  Id.  The divorce resulted in

Mary Chibaro's receiving fifty-five percent of Dr. Chibaro's interests in the Plans.  Id. ¶ 28.

For over a decade, Janeiro was an employee and co-owner of the USPA.  Janeiro v. Urological Surgery Prof'l Ass'n, 457 F.3d 130, 133 (1st Cir. 2006).  As such, he was a participant in the Plans.  Id.  "In July of 2000, Janeiro gave notice that he intended to leave the USPA."  Id. at 134.  He terminated his employment in October of that year.  Id.  Under the terms of the Plans, he was due a distribution of benefits, payable "in a lump sum at the valuation date following the occurrence precipitating the disbursement."  Id.  The event precipitating Janeiro's disbursement was his departure from the USPA in October of 2000, and the valuation date following that occurrence was December 31, 2000.  See id.

On December 31, 2000, Janeiro's share of the Plans' assets was valued at $651,680.  Id. at 135.  Notwithstanding Janeiro's clear statements to Chibaro that he wanted to withdraw his assets from the Plans as soon as possible, id. at 134-35, Janeiro did not receive a disbursement until the late fall of 2002.  Id. at 135.  Between December 31, 2000, and the time when Janeiro received his disbursement, the value of the assets funding the Plans declined (due to a steadily declining stock market), and Janeiro's share of those assets declined in value

4

by $195,036 (to $456,644).  Id.  Rather than receiving an amount
equal to the value of his share of the Plans' assets as of
December 31, 2000 ($651,680), Janeiro received an amount equal
to the value of his share of the Plans' assets as of June 30,
2002 ($456,644).  Id.  Janeiro received that diminished payout
because Plan assets sufficient to pay the amount due as of
December 31, 2000, were not liquidated and segregated from other
plan assets but, instead, remained in riskier investments, id.
at 136, and because the December 31 valuation of the Plans was
not completed in a timely manner, id.

In a previous action in this court, No. 03-cv-325-B,
Janeiro sued the USPA, the Plans, and Chibaro to recover the
difference between the value of his share of the Plans as of
December 31, 2000, and the amount of benefits the Plans
disbursed to him.  He won a judgment against the Plans, affirmed
on appeal, that he was owed the full amount he sought, i.e.,
$195,036.  See Janeiro, 457 F.3d at 145.

At some point, "[t]he United States Department of Labor
["DOL"] opened an investigation of the valuations and the
distributions of the Plans."  Chibaro Aff. ¶ 47.  "Following the
conclusion of the Janeiro litigation, the DOL sought to ensure
that the other plan participants similarly situated to Dr.
Janeiro were also made whole.  The DOL agreed that if the other

participants were made whole, the DOL would conclude the investigation." Id. ¶ 48. In accordance with that agreement, "the Profit Sharing Plan paid a total $42,594 to former employees who, like Dr. Janeiro, suffered a loss in the value of their vested interest in the Plans between December 31, 2000 and the June 30, 2002 valuations." Id. ¶ 49. Both the judgment the Plans paid to Janeiro and the payments the Profit Sharing Plan made to other former employees were funded exclusively from Chibaro's interest in the Plans. Id. ¶¶ 46, 49.

While Judge Barbadoro ruled in favor of Janeiro on his claim against the Plans for benefits under 29 U.S.C. § 1132(a)(1)(B), see Janeiro, 457 F.3d at 136, he granted judgment as a matter of law to Chibaro (and the USPA) on Janeiro's "claim for damages based on a breach of fiduciary duty theory [under 29 C.F.R. § 1132(a)(3)], because such a claim does not lie where, as here, the suit is only on behalf of a claimant who has an available claim for benefits," id. (citations omitted). In defending against Janeiro's claims, the Janeiro defendants did not implead William Mann or Prizer pursuant to Rule 14 of the Federal Rules of Civil Procedure but, rather, sued Fecteau Benefits Group and William Mann in a separate action before Judge DiClerico, 04-cv-422-JD, and then attempted to consolidate that case with the case before Judge Barbadoro. Judge DiClerico

dismissed the action against Fecteau Benefits and William Mann on ripeness grounds.  See Urological Surgery Prof'l Ass'n v. Fecteau Benefits Grp., Inc., 359 F. Supp. 2d 24, 26 (D.N.H. 2005).  As a result, Judge DiClerico terminated, as moot, the plaintiffs' motion to consolidate their case before him with the case before Judge Barbadoro.  Id. at 26.  Subsequently, Judge Barbadoro denied the Janeiro defendants' motion to consolidate Janeiro with the case before Judge DiClerico.  See Endorsed Order, No. 03-cv-325-B (D.N.H. Mar. 7, 2005).

One of the issues litigated in Janeiro, at trial and on appeal, was the correct standard of review.  457 F.3d at 139-42. In his ruling from the bench, Judge Barbadoro explained that he reviewed Chibaro's actions as plan administrator de novo because Chibaro was "operating under a conflict of interest that was so severe . . . that it entitle[d] his judgments . . . to no discretion."  Defs.' Mem. of Law, Ex. 1 (document no. 32-1), at 86.  Judge Barbadoro then went on to identify three reasons why he determined that Chibaro was operating under a conflict of interest: (1) "it was [Chibaro's] breaches of fiduciary duty [i.e., failing to direct the liquidation and segregation of assets and failing to have the Plans valued promptly after December 31, 2000] that produced the losses that the plan suffered here," id. at 87, which created in Chibaro a reasonable

fear that he would be subject to suit for breaching his fiduciary duties, id. at 87-88; (2) "in June of 2001 and thereafter Dr. Chibaro was in a highly adversarial relationship with the departing employees," id. at 88;[2] and (3) due to his ownership of ninety-two percent of the assets that would remain in the Plans after disbursements to the departing participants, Chibaro "would be the principal beneficiary" of a decision not to make disbursements based on the December 31, 2000, valuation, id.  In other words, Judge Barbadoro reviewed Chibaro's actions under the de novo standard because he found them to be motivated by Chibaro's fear of litigation, his interest in disadvantaging the departing participants, and his interest in benefitting himself in his position as the largest remaining participant in the Plans.

On appeal, the Janeiro defendants attacked all three grounds for Judge Barbadoro's finding that Chibaro was operating under a conflict of interest, and the court of appeals determined that all three were supported by the evidence of record.  457 F.3d at 139-40.  Regarding the first factor, fear of litigation, the Janeiro defendants argued that "none of Chibaro's professional advisors told him he was obliged to

---

[2] Given Judge Barbadoro's other findings, and the fact that Janeiro departed the USPA in October of 2000, it seems likely that Judge Barbadoro intended to say "in June of 2000 and thereafter" rather than "in June of 2001 and thereafter."

liquidate and segregate assets sufficient to pay the imminently departing plan participants." Id. at 140.  In rejecting that argument, the court of appeals noted that "the district court found that Chibaro failed to inform the investment advisor in the first place that a significant exodus was imminent . . . and expressly refused to find that he relied in good faith on the advice of professionals."[3]  Id.

In this action, plaintiffs seek to recover the $237,630 paid to Janeiro and the other departing plan participants, plus post-judgment interest and costs on the $195,036 judgment the Plans paid Janeiro and interest on the $42,594 that was paid to the other departing participants.

_____

[3] Earlier in its opinion, the court of appeals described Judge Barbadoro's factual finding somewhat more expansively:

> Chibaro was in breach of his fiduciary duty in two ways: First, Chibaro was aware as of December 30, 2000 that a substantial amount of the assets, having been claimed by the departing participants, would (or should) shortly be leaving the plan, but he failed to apprise the plan's investment advisor of this fact so that the advisor could liquidate and segregate sufficient plan assets.  This failure meant that "the assets remained invested in a mixture of stocks and bonds[,] which exposed the assets to be distributed to an unacceptable degree of market risk."

Janeiro, 457 F.3d at 136.

9

**Discussion**

A. Count IV

Count IV is plaintiffs' claim for breach of fiduciary duty.

Specifically, they allege that

> William Mann and Mr. Prizer negligently breached
> [their] duties to the Plaintiffs by failing to place a
> substantial percentage of the Plans' assets, including
> the assets of the soon-to-be departing participants,
> in risk-free or low risk investments once they knew or
> should have known that approximately half of USPA's
> employees terminated their employment in 2000 and
> wished to receive distributions as of the next
> valuation date on December 31, 2000.

Compl. ¶ 108.  Plaintiffs further allege that

> William Mann and Mr. Prizer negligently breached
> [their] duties to the Plaintiffs by failing to
> maintain communications with Fecteau Benefits
> concerning the status of the departing assets and the
> valuations and revaluations [of the Plans] so that
> William Mann and Mr. Prizer could consider this
> information in making its investment decisions in the
> best interests of the participants of the Plans.

Compl. ¶ 111.

29 U.S.C. § 1132(a)(2) provides that the Secretary of

Labor, a participant, beneficiary, or fiduciary of an ERISA plan

may bring a civil action for appropriate relief under 29 U.S.C.

§ 1109, which provides, in pertinent part, that

> [a]ny person who is a fiduciary with respect to a
> plan who breaches any of the responsibilities,
> obligations, or duties imposed upon fiduciaries by
> this subchapter shall be personally liable to make
> good to such plan any losses to the plan resulting
> from each such breach, and to restore to such plan any
> profits of such fiduciary which have been made through

> use of assets of the plan by the fiduciary, and shall
> be subject to such other equitable or remedial relief
> as the court may deem appropriate, including removal
> of such fiduciary.

29 U.S.C. § 1109(a). The United States Supreme Court has

recently held that § 1132(a)(2) "authorize[s] recovery for

fiduciary breaches that impair the value of plan assets in a

participant's individual account." LaRue v. DeWolff, Boberg &

Assocs., Inc., 552 U.S. 248, 256 (2008). While the complaint

characterizes Count IV as being brought by all the named

plaintiffs, the court construes the claim stated therein as

being brought by Chibaro alone, as neither the USPA nor the

Plans have standing to pursue an ERISA-based claim for breach of

fiduciary duty.[4]

Defendants argue that the doctrine of collateral estoppel

bars Chibaro's fiduciary-duty claim against them. Specifically,

they rely on Judge Barbadoro's finding that Chibaro "exclusively

exercised the responsibilities of plan administration and

---

[4] 29 U.S.C. § 1132(d)(1) does provide that "[a]n employee
benefit plan may sue or be sued under this subchapter as an
entity," but "various courts, including the Second Circuit, have
overwhelmingly concluded that a plan, as distinct from its
participants, beneficiaries and fiduciaries lacks standing under
ERISA to sue claiming breach of fiduciary duty, and that
accordingly, a federal court lacks subject matter jurisdiction
over any such claim brought by a plan." Agway, Inc. Emps.'
401(k) Thrift Inv. Plan v. Magnuson, No. 5:03-CV-1060 (HGM/DEP),
2006 WL 2934391, at *12 (N.D.N.Y. Oct. 12, 2006) (citing
Pressroom Unions-Printers League Income Sec. Fund v. Continental
Assurance Co., 700 F.2d 889, 891-93 (2d Cir. 1983)) (other
citations omitted).

exclusively exercised the responsibilities as trustee of both plans." Defs.' Mem. of Law, Ex. 1, at 64. They also rely on Judge Barbadoro's finding that

> [t]he losses that were suffered in this case by the plans as a result of the demands placed on the plans by the departing employees and declines in the market that occurred before those assets were actually paid out are due entirely and exclusively to the breaches of fiduciary duty by Dr. Chibaro to liquidate and segregate plan assets.

Id. at 80. Judge Barbadoro made one additional relevant finding:

> I make no finding with respect to Dr. Chibaro's communications with his investment advisor except that I do find credible the investment advisor's statement that he was not apprised prior to December 31, 2000 as to the percent of the assets that would end up having to be withdrawn from the plan to satisfy the needs of departing employees. That was information that was available to Dr. Chibaro in his capacity as plan administrator, but the financial advisor did not have independent access to that information and Dr. Chibaro did not communicate it to the investment advisor.

Id. at 79. Plaintiffs contend that collateral estoppel is inapplicable.

"Collateral estoppel, now often called issue preclusion, prevents a party from relitigating issues that have been previously adjudicated." Rodriguez-García v. Miranda-Marín, 610 F.3d 756, 770 (1st Cir. 2010) (citing Enica v. Principi, 544 F.3d 328, 336 (1st Cir. 2008)).

Collateral estoppel may be applied where "(1) the issue sought to be precluded in the later action is

the same as that involved in the earlier action; (2)
the issue was actually litigated; (3) the issue was
determined by a valid and binding final judgment; and
(4) the determination of the issue was essential to
the judgment."

Rodríguez-García, 610 F.3d at 770 (quoting Ramallo Bros.
Printing, Inc. v. El Dia, Inc., 490 F.3d 86 (1st Cir. 2007)).

Plaintiffs contend that collateral estoppel is inapplicable
because: (1) there is no mutuality between the parties in this
case and those in Janeiro; (2) there is no identity of issues;
(3) the findings on which defendants rely were not necessary to
the decision in Janeiro; (4) they deserve a fair opportunity to
litigate against the defendants in this case; (5) collateral
estoppel will not promote judicial economy; and (6) collateral
estoppel will confuse the jury.  The court considers each
argument in turn.

1. Mutuality of the Parties

The court of appeals for this circuit has recently
addressed the issue of mutuality:

> In the past, courts "adhered to the doctrine of
> 'mutuality of estoppel,' which ordained that 'unless
> both parties (or their privies) in a second action are
> bound by a judgment in a previous case, neither party
> (nor his privy) in the second action may use the prior
> judgment as determinative of an issue in a second
> action.' "  Acevedo-Garcia [v. Monroig], 351 F.3d
> [547,] 573 [(1st Cir. 2003)] (quoting Blonder-Tongue
> Labs. v. Univ. of Ill. Found., 402 U.S. 313, 320-21
> (1971)).  However, mutuality is no longer strictly
> required for the application of collateral estoppel in

13

> federal courts.  *Fiumara v. Fireman's Fund Ins. Cos.*,
> 746 F.2d 87, 92 (1st Cir. 1984).  Instead, the central
> question is "whether a party has had a full and fair
> opportunity for judicial resolution of the same
> issue."  *Id.*

*Rodríguez-García*, 610 F.3d at 770-71 (parallel citations

omitted).  The court further explained that "[n]onmutual

collateral estoppel may be invoked . . . by a defendant who

'seeks to prevent a plaintiff from asserting a claim the

plaintiff has previously litigated and lost against another

defendant.'"  *Id.* at 771 (quoting *Parklane Hosiery Co. v. Shore,*

439 U.S. 322, 329-32 (1979)).

Based on *Rodríguez-García*, plaintiffs are plainly incorrect

in their assertion that the lack of mutuality, without more, is

a sufficient reason to reject defendants' invocation of

collateral estoppel.  More importantly, both Judge Barbadoro's

decision in *Janeiro* and the appellate opinion in that case make

it clear that Chibaro, as a defendant in *Janeiro*, had a full and

fair opportunity to litigate the factual questions decided

against him in that case and that defendants seek to estop him

from relitigating here.  That is, Chibaro had the chance to

litigate, and did actually litigate, the facts related to his

responsibility for the losses suffered by Janeiro and the other

departing plan participants, including any culpability that

might be assigned to defendants in this case.

2. Identity of Issues

"With respect to . . . identity of issues, '[i]t is common ground that the reach of collateral estoppel "must be confined to situations where the matter raised in the second suit is identical in all respects to that decided in the first proceeding."'" Enica, 544 F.3d at 337 (quoting Faigin v. Kelly, 184 F.3d 67, 78 (1st Cir. 1999); Comm'r v. Sunnen, 333 U.S. 591, 599-600 (1948)).  In plaintiffs' view, there is no identity of issues because, in Janeiro, the Plans lost an ERISA benefits claim while here, Chibaro is claiming that William Mann and Prizer violated their fiduciary duties under ERISA.  That argument is not persuasive.  See Keystone Shipping Co. v. N.E. Power Co., 109 F.3d 46, 51 (1st Cir. 1997) ("The principle of collateral estoppel, or issue preclusion . . . bars relitigation of any factual or legal issue that was actually decided in previous litigation between the parties, whether on the same or a different claim.") (citations and internal quotation marks omitted, second emphasis added).  The relevant question is not the identity of the causes of action in the two cases; it is the identity of the legal or factual issues raised in those cases that matters.

In Enica, the plaintiff brought an accommodation claim under the Rehabilitation Act and argued that the trial court

should have given preclusive effect, under the doctrine of
offensive collateral estoppel, to certain findings made by the
Department of Labor during its adjudication of a workers'
compensation claim.  544 F.3d at 335, 337.  The court of appeals
held that there was no identity of issues where

> the issue addressed and resolved by the Department of
> Labor was whether Enica's injuries (bursitis) were
> caused by excessive walking in the course of her
> employment at the VA [while] the issue before the
> district court was whether the VA failed to provide
> Enica with reasonable accommodations in connection
> with her disability.

Id. at 337.  In Faigin, A.J. Faigin brought a defamation claim
against James Kelly, and argued that the trial court should have
given preclusive effect, under the doctrine of offensive
collateral estoppel, to a sanctions order entered against Kelly
in a previous case Kelly had brought against Faigin.  184 F.3d
at 77.  The court of appeals held that there was no identity of
issues where

> [t]he issue addressed and resolved by the Sanctions
> Order was whether Kelly had abused the judicial
> process in failing to produce evidence to substantiate
> claims that he had made regarding Faigin's supposed
> involvement in shady investment activities [while] the
> issue below was the truthfulness vel non of the
> remarks contained in Kelly's autobiography.

Id. at 78.  Here, by contrast, the factual findings that Judge
Barbadoro made in Janeiro and that defendants seek to apply in
this case are identical.  Judge Barbadoro found that the losses

16

suffered by the Plans were due entirely and exclusively to Dr. Chibaro's failure to have the Plans valued in a timely fashion and his failure to liquidate and segregate plan assets while here, Chibaro claims that the losses suffered by the Plans were due to defendants' failure to liquidate and segregate plan assets.[5]  It is difficult to imagine a clearer example of identity of issues.

### 3. Necessity to the Judgment

Collateral estoppel bars the relitigation of issues that were essential to a previous judgment.  As plaintiffs correctly point out, "pure dicta . . . cannot have any collateral estoppel effect because it is not essential to the judgment." Bath Iron Works Corp. v. Coulombe, 888 F.2d 179, 180 (1st Cir. 1989) (citing McDaniel v. Sanchez, 452 U.S. 130, 141 (1981); Balcom v. Lynn Ladder & Scaffolding Co., 806 F.2d 1127 (1st Cir. 1986)). "The reasons for this condition are that a collateral issue, although it may be the subject of a finding, is less likely to receive close judicial attention and the parties may well have only limited incentive to litigate the issue fully since it is not determinative." Commercial Assocs. v. Tilcon Gammino, Inc., 998 F.2d 1092, 1097 (1st Cir. 1993) (citing Wright, Miller &

_____

[5] In Count I, Chibaro charged Fecteau Benefits and Thomas Fecteau with failing to produce valuations of the Plans in a timely fashion.  See Compl. ¶¶ 74-76, 80.

Cooper, Federal Practice and Procedure § 4421 at 193 (1981
ed.)).  "[E]xtending the force of [an] unnecessary finding into
a different case is deemed too risky and possibly unfair."
Commercial Assocs., 998 F.2d at 1097.  Here, plaintiffs identify
three determinations for which, in their view, defendants seek
preclusive effect, and then they argue that none of those
findings was necessary to the decision in Janeiro.

As a preliminary matter, the three issues plaintiffs
identify are not quite the issues on which defendants rely.
Specifically, plaintiffs argue that defendants are not entitled
to collateral estoppel on these issues: (1) "Dr. Chibaro
breached fiduciary duties," Pls.' Mem. of Law (document no. 44-
1) 27; (2) "Dr. Chibaro exclusively breached fiduciary duties,"
id. at 29; and (3) "Dr. Chibaro's exclusive breach of fiduciary
duties caused the harm," id.  The actual factual determinations
on which defendants seek to rely, however, are that "Dr. Chibaro
'exclusively exercised the responsibilities of plan
administration and exclusively exercised the responsibilities as
trustee of both plans,' " Defs.' Mem. of Law (document no. 32)
9; and that

> [t]he losses that were suffered in this case by the
> plans as a result of the demands placed on the plans
> by the departing employees and declines in the market
> that occurred before those assets were actually paid
> out are due entirely and exclusively to the breaches
> of fiduciary duty by Dr. Chibaro to liquidate and
> segregate plan assets. . . .

Id. The question before the court is whether the findings that

defendants seek to apply in this case were necessary to Judge

Barbadoro's decision in Janeiro.  They were.

Plainly, Judge Barbadoro did not render a judgment that

Chibaro was liable to Janeiro for breaching his fiduciary duties

under ERISA; he granted Chibaro (and the USPA) judgment as a

matter of law on Janeiro's claim for breach of fiduciary duties.

Janeiro, 457 F.3d at 136.  But, the parties in Janeiro did

vigorously litigate the standard of review in that case, id. at

139-42, and Judge Barbadoro's findings and conclusions regarding

Chibaro's conduct were essential to his decision, affirmed on

appeal, to apply the de novo standard because Chibaro was acting

under a severe conflict of interest.[6]

---

[6] While plaintiffs do not raise the issue, there is
authority for the proposition that issues resolved in the
context of deciding procedural matters are essential to the
judgment for purposes of collateral estoppel.  See, e.g.,
Monarch Life Ins. Co. v. Ropes & Gray, 65 F.3d 973, 983 (1st
Cir. 1995) (holding that bankruptcy court's ruling on
jurisdiction was essential to the effectiveness and validity of
its decision).

Plaintiffs argue to the contrary, noting that Judge Barbadoro identified three separate factors supporting his determination that Chibaro suffered from a conflict of interest. Indeed, " '[i]f a judgment of a court of first instance is based on determinations of two issues, either of which standing independently would be sufficient to support the result, the judgment is not conclusive with respect to either issue standing alone,' and neither receives preclusive effect." Rutanen v. Baylis (In re Baylis), 217 F.3d 66, 71 (1st Cir. 2000) (quoting 1 Restatement (Second) of Judgments § 27 cmt. i).  "If, however, 'the appellate court' affirms both grounds of the holding, each ground receives preclusive effect."  In re Baylis, 217 F.3d at 71 (quoting 1 Restatement (Second) of Judgments § 27 cmt. o).

Here, the appellate court affirmed Judge Barbadoro's factfinding on all three grounds he cited for determining that Chibaro was under a conflict of interest.  See Janeiro, 457 F.3d at 139-41.  Specifically, the court upheld Judge Barbadoro's findings that "Chibaro failed to inform the investment advisor in the first place that a significant exodus was imminent," id. at 140, and that "Chibaro was at fault for failure to timely liquidate and segregate sufficient assets," id. at 141. Accordingly, there is no merit to plaintiffs' argument that

Judge Barbadoro's findings, upon which defendants seek to rely, were not essential to his judgment.[7]

### 4. Opportunity to Litigate Against These Defendants

Plaintiffs next argue that Chibaro deserves a full and fair opportunity to litigate against William Mann and Prizer, having been denied the opportunity to seek recovery from them during the pendency of <u>Janeiro</u>.  They seem to be particularly interested in relitigating Judge Barbadoro's finding that defendants did not know about the exodus of Plan participants before December 31, 2000, and introducing evidence that Prizer learned about those departures through his work as a private investment advisor for Janeiro and Mary Chibaro, which plaintiffs learned about only through discovery in this case.[8]

--------

[7] The court of appeals affirmed Judge Barbadoro's finding that Chibaro had failed to notify William Mann and Prizer of the impending "significant exodus" from the USPA.  It did so in direct response to the argument, advanced by the <u>Janeiro</u> defendants, that "none of Chibaro's professional advisors told him he was obliged to liquidate and segregate assets sufficient to pay the imminently departing plan participants."  457 F.3d at 140.  It is difficult to understand how plaintiffs can assert that the court's findings and rulings on an argument they raised was not essential to the judgment.

[8] There is no need to decide this issue, but the court is dubious of the proposition that defendants were obligated, or even legally permitted, to use information they learned while working for Janeiro and/or Mrs. Chibaro to make decisions on matters arising in their work for an entirely different client, <u>i.e.</u>, the Plans.

While plaintiffs argue that they have not had a fair opportunity to litigate against William Mann and Prizer, that is not exactly the case.  To be sure, their previous action against William Mann was dismissed on ripeness grounds.  But that dismissal resulted from their own decision to sue William Mann and Fecteau Benefits in a separate action, rather than impleading them as third-party defendants in the Janeiro case, a procedural move that might well have met with success.[9] Plaintiffs had an opportunity to litigate against William Mann and Prizer in Janeiro and, for whatever reason, chose not to

---

[9] In dismissing the case before him, Judge DiClerico provided a roadmap for plaintiffs (then defendants) to implead any other parties who might share liability for the breach of fiduciary duty with which they had been charged by Janeiro:

> USPA mistakenly relies on Federal Rule of Civil Procedure 14 to support its argument that its contribution and indemnification claims are properly raised here.  Rule 14(a) provides that "a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff."  Rule 14(a) merely provides a procedure to bring a third-party claim in an existing action; the rule does not provide a substantive cause of action for indemnification or contribution.  See 6 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1448 (1990); see also Z.B. ex rel. Kilmer v. Ammonoosuc Comty. Health Servs., Inc., 225 F.R.D. 60, 61 (D. Me. 2004); Brown v. Shredex, Inc., 69 F. Supp. 2d 764, 767 (D.S.C. 1999).  Therefore, Rule 14(a) is inapposite to this case.

Urological Surgery, 359 F. Supp. 2d at 26.

take it.  Their decision should not preclude defendants from
enjoying the benefit of collateral estoppel in this case.

### 5. Judicial Economy

Plaintiffs argue that they sought to promote judicial
economy by moving to consolidate their action against William
Mann and Fecteau Benefits (04-cv-422-JD) with Janeiro's action
against them (03-cv-125-B), and that by allowing defendants the
benefit of collateral estoppel in this case, the court would
reward conduct the Supreme Court condemned in Parklane.  In
Parklane, the Supreme Court observed that the offensive use of
collateral estoppel gives potential plaintiffs an incentive to
adopt a "wait and see" attitude while other plaintiffs litigate
against a common defendant.  439 U.S. at 330.

This case, however, involves the use of collateral estoppel
defensively, not offensively, albeit against a party who was
previously a defendant (but also a potential third-party
plaintiff).  As the Supreme Court explained, "defensive
collateral estoppel gives a plaintiff a strong incentive to join
all potential defendants in the first action if possible."  Id.
at 329-30.  While plaintiffs may have attempted to advance
judicial economy by moving to consolidate their previous action
against William Mann and Fecteau benefits with Janeiro's case
against them, plaintiffs failed to take the seemingly more

efficacious step of impleading William Mann and Fecteau Benefits
as third-party defendants in Janeiro.  Given that plaintiffs
lost an earlier opportunity to litigate against William Mann and
Prizer by failing to implead them in Janeiro, it seems inapt for
plaintiffs, who once sat on their rights – if inadvertently – to
now accuse defendants of taking a "wait and see" attitude.  In
short, plaintiffs' judicial-economy argument is not persuasive.

### 6. Jury Confusion

Plaintiffs' argument concerning jury confusion is similarly
unavailing.  They contend that a jury would be confused by the
application of collateral estoppel in this case, given that it
would apply to some plaintiffs and not others, and would not
apply to Chibaro in his capacity as a plan participant and
beneficiary.  The case on which plaintiffs rely, Hurt v.
Pullman, Inc., 764 F.2d 1443 (11th Cir. 1985), involved an
application of collateral estoppel in which mutuality of parties
was required.  Given that mutuality of parties is not a
requirement in this case, Hurt is of limited utility, and the
court has no doubt that it could properly instruct a jury in
this case on the proper application of collateral estoppel.

7. Analysis and Summary

Based on the foregoing, the court concludes that all four
conditions for applying collateral estoppel set out in
Rodríguez-García, have been satisfied and that plaintiffs'
additional objections to the application of collateral estoppel
are not persuasive.  Accordingly, Judge Barbadoro's factual
findings in Janeiro have preclusive effect in this case.  Now,
it is necessary to apply those findings to the cause of action
set out in Count IV, to determine the precise effects of those
findings on plaintiffs' claims in this case.  While plaintiffs
argue that collateral estoppel should not be applied at all,
they make no argument that Count IV could survive the
application of collateral estoppel, apparently conceding the
point.

Defendants contend that Judge Barbadoro's finding that
Chibaro exclusively exercised the responsibilities of plan
administration and trusteeship, and his finding that the losses
suffered by the Plans as a result of the late payout to Janeiro
were "due entirely and exclusively to the breaches of fiduciary
duty by Dr. Chibaro to liquidate and segregate plan assets . . .
and to take appropriate steps to ensure that the valuation was
completed in a timely fashion" are fatal to any claim that

William Mann or Prizer violated their fiduciary duties under
ERISA.  The court agrees.

Judge Barbadoro determined that the losses in Janeiro were
due to Chibaro's failure to obtain timely plan valuations and
his failure to liquidate and segregate assets sufficient to pay
out Janeiro's share in time to avoid the losses that occurred
after December 31, 2000.  Janeiro, 457 F.3d at 142.  He also
determined that Chibaro did not inform William Mann or Prizer of
the impending departures of plan participants prior to that
date, and that "the financial advisor did not have independent
access to that information."  Defs.' Mem. of Law, Ex. 1, at 79.
Given Judge Barbadoro's determination that the losses in Janeiro
were due exclusively to Chibaro's failure to liquidate and
segregate assets in time to avoid the losses that began accruing
on December 31, 2000, and in light of the court of appeals'
affirmance of Judge Barbadoro's rejection of Chibaro's attempt
to shift blame to his financial advisors, i.e., William Mann and
Prizer, see Janeiro, 457 F.3d at 140, defendants are entitled to
judgment as a matter of law on Chibaro's ERISA claim for breach
of fiduciary duty.  The factual bases for those claims were
conclusively decided against Chibaro in Janeiro.  Accordingly,
defendants' motion for summary judgment is granted as to Count
IV.

B. Count V

Count V is plaintiffs' claim, under ERISA, for contribution and indemnity for the various payments made to Janeiro and the other departing participants.  29 U.S.C. § 1132(a)(3) provides that a participant, beneficiary, or fiduciary of an ERISA plan may bring a civil action to enjoin acts that violate the statute or the terms of the plan, or "to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."  As with Count IV, it is necessary to determine which of the plaintiffs are bringing the claim.  Under the statutory language, the only proper plaintiff is Chibaro, as a fiduciary.

Defendants seek summary judgment on Chibaro's ERISA-based claim for contribution and indemnity on grounds that ERISA does not permit such claims.  They argue that there is a split of authority on this issue, and ask the court to follow those circuits that have held that ERISA does not authorize such claims.  Plaintiffs, for their part, point to decisions from the Second and Seventh Circuits which recognize the availability of claims for contribution and indemnity under ERISA.  See Chemung Canal Trust Co. v. Sovran Bank/Maryland, 939 F.2d 12 (2d Cir. 1991); Free v. Briody, 732 F.2d 1331 (7th Cir. 1984); Alton

Mem'l Hosp. v. Metro. Life Ins. Co., 656 F.2d 245 (7th Cir. 1981).

"Neither the Supreme Court nor the First Circuit Court of Appeals has directly addressed the existence of a federal common-law right to contribution and indemnification under ERISA." Charters v. John Hancock Life Ins. Co., 583 F. Supp. 2d 189, 193 (D. Mass. 2008). In this case, however, it is not necessary to predict how the court of appeals would resolve that question. In each of the appellate opinions on which plaintiffs rely, and in each of the district court cases they cite, the claim for contribution or indemnity was brought by a fiduciary who had been found liable for, or stood accused of, breaching a fiduciary duty. In Chemung Canal, the Second Circuit pointed out that "[c]ontribution deals with allocating obligations among co-defendants and/or third parties." 939 F.2d at 15. The court then held that ERISA "provides for a right of contribution among defaulting fiduciaries." Id. at 16. In so holding, the court explained that "[t]here is no reason why a single fiduciary who is only partially responsible for a loss should bear its full brunt." Id. In Alton Memorial, the Seventh Circuit held that "where an ERISA plan suffers losses and where the plan participants and beneficiaries have established a cause of action . . . against one fiduciary, that fiduciary may seek

28

indemnification or contribution from co-fiduciaries in accordance with 29 U.S.C. § 1105(a)."  656 F.2d at 250.  But, after stating that rule, the <u>Alton Memorial</u> court held the rule to be inapplicable in the case before it because "no breach of fiduciary duties with respect to plan participants and beneficiaries can be established."  <u>Id.</u>  That statement describes this case, as well.

In support of his decision to apply <u>de novo</u> review, Judge Barbadoro found, as a factual matter, that Chibaro breached his fiduciary duties.  But, Chibaro (and the USPA) won judgment as a matter of law on Janeiro's ERISA-based breach-of-fiduciary-duty claim.  And, as described by Chibaro himself, the agreement with the DOL that resulted in payments to former employees other than Janeiro did nothing more than follow the judgment in <u>Janeiro</u>, <u>see</u> Chibaro Aff. ¶ 48, which resulted in no legal liability for Chibaro as a fiduciary.  Thus, Chibaro has incurred no legal liability as a fiduciary and has suffered no loss.  He has born no brunt, and is under no obligation that could be allocated to defendants through contribution or indemnity.[10]  Accordingly, even if the First Circuit were to follow the Second and Seventh

---

[10] Chibaro says that the Plans' payments to Janeiro and the other former USPA employees came out of his own interests in the Plans, Chibaro Aff. ¶¶ 46, 49, but even so, the fact remains that neither Judge Barbadoro nor the DOL ever made a legal determination that Chibaro breached his duties as a fiduciary of an ERISA plan.

Circuits and recognize a right to contribution and indemnity among duty-breaching ERISA fiduciaries, defendants in this case would be entitled to judgment as a matter of law because the party seeking contribution from them has not himself been found liable for breaching his fiduciary duties under ERISA.  On that basis, defendants' motion for summary judgment is granted as to Count V.

C. Count VI

In Count VI, plaintiffs assert a state-law negligence claim against William Mann and Prizer, and also contend that they are entitled to contribution from defendants under New Hampshire Revised Statute Annotated ("RSA") § 507:7-f, and to indemnity under New Hampshire common law.  Like Counts IV and V, Count VI fails to specify which of the five plaintiffs is making the claim(s) stated therein.  In that Chibaro is the only plaintiff that is an ERISA fiduciary, the court construes Count VI as being Chibaro's claim.  Count VI also contains somewhat conflicting legal theories in that plaintiffs make a claim for negligence (based on defendants' asserted liability to plaintiffs) and also make claims for contribution and indemnity (based on plaintiffs' and defendants' asserted joint liability to a third party, presumably Janeiro).

Defendants seek summary judgment on Count VI, arguing that because ERISA does not allow claims for contribution and indemnity, plaintiffs' state-law claims seeking the same relief are pre-empted by ERISA.  Plaintiffs contend that ERISA preemption is an affirmative defense that defendants have failed to preserve.

Having granted summary judgment to defendants on both of plaintiffs' federal claims, the court declines to exercise supplemental jurisdiction over the remaining state-law claims. See 28 U.S.C. § 1367(c)(3); Camelio v. Am. Fed'n, 137 F.3d 666, 672 (1st Cir. 1998).  Even if the court were to exercise supplemental jurisdiction over Count VI, however, defendants would be entitled to judgment as a matter of law on the negligence claim on the basis of ERISA preemption, and they would be entitled to judgment as a matter of law on the claim for contribution and indemnity for the same reasons that supported summary judgment in their favor on Count V.

The ERISA preemption provision provides that "[e]xcept as provided in subsection (b) of this section, the provisions of this subchapter . . . shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan. . . ."  29 U.S.C. § 1144(a).  The term "State law" encompasses the results of litigation on state-law causes of

action.  See Hampers v. W.R. Grace & Co., 202 F.3d 44, 49
(citing 29 U.S.C. § 1144(c)(1)).  "Express 'ERISA preemption
analysis . . . involves two central questions: (1) whether the
plan at issue is an "employee benefit plan" and (2) whether the
cause of action "relates to" this employee benefit plan.' "
Hampers, 202 F.3d at 49.

In Hampers, the plaintiff sued his employer for, among
other things, "lump sum contract damages," 202 F.3d at 45, for
failing to "enroll the plaintiff in an ERISA-regulated employee
pension benefit plan," id., in breach of the plaintiff's
employment contract with the defendant," id. at 46.  The court
of appeals held that the plaintiff's contract claim related to
the employee benefit plan to which he was denied access.  Id. at
53-54.

Given the way plaintiffs have framed Count VI, the court
has no difficulty concluding that the negligence claim stated
therein relates to the employee-benefit plans in this case.
Count VI charges William Mann and Prizer with "negligence in the
discharge of [their] duties."  Compl. ¶ 131.  The three
paragraphs of the complaint devoted to Count VI do not indicate
the duties William Mann and Prizer are supposed to have
breached, see Compl. ¶¶ 129-31, and the only duties mentioned
anywhere else in the complaint are defendants' duties as plan

fiduciaries, i.e., the duty to liquidate and segregate plan
assets and the duty to communicate with the Plans' third-party
administrator to ascertain the status of plan participants.
Thus, like the plaintiff in Hampers, Chibaro has made a state-
law claim that alleges the same conduct as his ERISA claim.  See
202 F.3d at 54.  The court also notes that plaintiffs' argument
in favor of supplemental jurisdiction, which points up the
shared factual and legal bases for plaintiffs' federal and state
claims, also supports a determination that the state-law claims
are so closely related to the ERISA plan that they are
preempted.  In sum, the negligence claim in Count VI is at least
as closely related to the ERISA plan at issue than the state-law
breach-of-contract claim the court of appeals held to be
preempted in Hampers.  Accordingly, the negligence portion of
Count VI is preempted by ERISA.

    As noted, plaintiffs contend that ERISA preemption is an
affirmative defense that defendants did not raise in their
answer and, therefore, waived.  In Wolf v. Reliance Standard
Life Insurance Co., 71 F.3d 444 (1st Cir. 1995), the court of
appeals held that "ERISA preemption in a benefits-due action is
an affirmative defense and, as such, . . . is subject to waiver
if not timely pleaded," id. at 449.  The court also explained,
however, that its "holding [was] limited to ERISA preemption of

benefits-due actions," noting that "ERISA permits several other types of civil actions (e.g., for injunctive relief, for breach of fiduciary duty, etc.) subject to exclusive jurisdiction in the federal courts . . . ." Id. at 449 n.8.  The upshot is that because plaintiffs' negligence claim in Count VI is a claim for the breach of a fiduciary duty rather than a claim for benefits due, Wolf is no impediment to defendants' reliance on ERISA preemption.

In Wolf, the court's decision turned on the distinction between federal statutory preemption that is jurisdictional, because it dictates the choice of forum, and preemption that is merely an affirmative defense, subject to waiver, because it pertains only to the choice of law.  Id. at 448.  With respect to a state-law claim for benefits due under an ERISA plan, preemption is a waivable affirmative defense for the following reason:

> ERISA preemption in a benefits-due action does not affect the choice of forum, because ERISA's jurisdictional provision provides that "State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions," 29 U.S.C. § 1132(e)(1) (emphasis added), "brought by a participant or beneficiary to recover benefits due."  29 U.S.C. § 1132(a)(1)(B).  The plain language of § 1132 tells us that if a plaintiff brought a "benefits-due" action in state court and the defendant pleaded ERISA preemption, this would not deprive the court of jurisdiction over the subject

> matter; rather, ERISA preemption in that situation
> would dictate the applicable law.

Id. On the other hand, with respect to a claim asserting the

breach of a fiduciary duty, the jurisdiction of the federal

courts is exclusive. See 29 U.S.C. § 1132(e)(1). This means

that if a plaintiff brought a breach-of-fiduciary-duty claim in

state court and the defendant pleaded ERISA preemption, the

court would be deprived of jurisdiction over the subject matter.

Thus, preemption in such a situation is jurisdictional rather

than something that only effects the choice of law. And,

following the reasoning of Wolf, where preemption is

jurisdictional rather than a waivable affirmative defense,

failure to raise preemption in an answer or other responsive

pleading does not bar a defendant from asserting it later.

Chibaro's state-law claims for contribution and indemnity

stand on a different footing. Given the circuit split regarding

the availability of contribution and indemnity under ERISA, such

claims may or may not be preempted.[11] But, presuming that those

claims are not preempted, defendants would be entitled to

judgment as a matter of law for the simple reason that no

---

[11] In Travelers Casualty & Surety Co. of America v. IADA
Services, Inc., 497 F.3d 862 (8th Cir. 2007), the court of
appeals held that "ERISA does not create a right of
contribution," id. at 867, and that state common-law claims for
contribution brought to apportion liability for ERISA violations
are preempted by ERISA, id. at 867-68.

plaintiff has been adjudged a tortfeasor or otherwise determined to be individually liable to Janeiro.  <u>See</u> RSA 507:7-f (establishing a right of contribution among joint tortfeasors); Consol. Util. Equip. Servs., Inc. v. Emhart Mfg. Corp., 123 N.H. 258, 261 (1983) (describing common-law rule under which "one joint tortfeasor can obtain indemnification, a complete shifting of liability, against another where the indemnitee's liability is derivative or imputed by law . . . or where an express or implied duty to indemnify exists").  Accordingly, even if a state-law claim for contribution and/or indemnity is not preempted by ERISA, such a claim would be unavailable to Chibaro because the necessary predicate, his liability for a breach of duty, has not been established.

In sum, the court declines to exercise supplemental jurisdiction over Count VI.  If the court were to entertain the claims stated therein, defendants would nonetheless be entitled to summary judgment on the negligence claim on the basis of ERISA preemption.  Defendants would also be entitled to summary judgment on the claim for contribution and/or indemnity for lack of a plaintiff who has been assigned liability for an obligation toward which contribution could be made.

**Conclusion**

For the reasons given, defendants' motion for summary judgment, document no. 31, is granted.  The clerk of the court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Landya B. McCafferty
United States Magistrate Judge

Date:  January 24, 2011

cc:  Thomas M. Closson, Esq.
     William B. Pribis, Esq.
     Jonathan M. Shirley, Esq.
     Alexander J. Walker, Esq.
     Joshua M. Wyatt, Esq.